# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00242-CV

---

**Jamie Alex, Appellant**

**v.**

**Housing Authority of the City of Luling, Texas, Appellee**

---

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 22-O-544, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Jamie Alex appeals from the trial court's summary judgment in favor of her former employer, the Housing Authority of the City of Luling, on her claim for unlawful employment discrimination. We affirm the trial court's summary judgment.

## BACKGROUND[1]

Alex filed this lawsuit against the Authority in December 2022 under the Texas Commission on Human Rights Act (TCHRA), alleging disability discrimination under Chapter 21 of the Texas Labor Code. *See* Tex. Lab. Code § 21.051. She alleges that she has a "disability of narcolepsy and sleep apnea," began working for the Authority in 2004, and had progressed to the position of Executive Director by 2021. On August 27, 2021, she was informed by two Authority board members, Jeff Ferry and Ada Kyle, that they were worried she had a drug

---

[1] The factual background in this section is taken from the allegations in Alex's live petition.

problem because she had been falling asleep at her desk. Alex informed Ferry and Kyle that she had a sleeping issue due to her disabilities of narcolepsy and sleep apnea and was working with her primary care physician to address the issues. Alex alleges that Kyle then told her she "needed to be in treatment" for her "drug issues" and gave her a phone number for inpatient rehab. Kyle and Ferry told her that if she did not get the help she needed, the board would discuss her "issue" at the next board meeting in September. Alex called the rehab number in front of Kyle and Ferry, but after she later learned what her out-of-pocket cost would be, she informed the rehab facility that she could not afford treatment.

About a week later, Kyle sent Alex a letter stating that Kyle believed "prescription drugs have gotten the best of you and you are sick." Attached to the letter was information about "prescription drug problems." Alex had an unrelated medical procedure a few days after she received Kyle's letter and, just before the procedure, her physician ordered a drug test, which revealed she "had no illegal drugs in her system." Around this time, Alex began seeking help from her physician for her "ADHD that she had experienced since childhood and for her sleeping disorder," as she had been "having sleep issues for over a year."[2]

On September 13, 2021, the board "went into executive session," and Alex "was asked to leave" the meeting. Kyle "was very rude" to Alex and "told her that the staff were scared of [Alex] and afraid of retaliation for speaking." After the meeting, Ferry told Alex that she "was going to be put on paid leave for six weeks to get herself together." Kyle informed Alex that she was not to communicate with anyone at the Authority except Kyle, and only

---

[2] As the Authority notes in its brief, Alex testified in her deposition that she had not received any treatment for her ADHD since she was in eighth grade and only received treatment recently after she was terminated, when she saw a doctor and was prescribed medication. Alex also testified that she did not inform the board or anyone at the Authority about her ADHD, except for three of her subordinates, until late August of 2021.

2

through text or emails. When Alex attempted to call Ferry about a week later because Kyle would not answer her question about group medical insurance premiums that were due, Ferry responded via text that Alex "could not talk to him or any board members." Then, on September 29, 2021, Alex received an email from Kyle informing her that her employment was being terminated "for unacceptable behavior and performance."

In October 2024, the Authority filed a combined no-evidence and traditional motion for summary judgment. In its motion, the Authority argued that (1) Alex had no evidence to establish a prima facie case to support her claim; (2) it had presented evidence of legitimate, nondiscriminatory reasons for Alex's termination; and (3) Alex had no evidence that its reasons were false or mere pretext. The Authority supported its motion with evidence including excerpts from Alex's deposition; correspondence between the parties, including the termination letter Kyle sent Alex; minutes and summaries from board meetings; staff surveys; and a report completed by a CPA in summer 2022 opining that the Authority had not maintained appropriate supporting documentation for its financial activities and balances for the year ending September 30, 2021, and identifying several accounting improprieties by the "previous Executive Director," i.e., Alex. In its summary-judgment motion, the Authority identified its legitimate, nondiscriminatory reasons for terminating Alex's employment: her falling asleep on the job, mishandling of Authority funds and grant money, allowing cash payments to be made without adequate documentation, and using profanity around and exhibiting hostility towards other employees. Further, the Authority asserted in its motion that Alex had never mentioned her ADHD diagnosis until the Board raised its concerns with her about her sleeping on the job.

Alex filed a response to the Authority's motion for summary judgment, but she did not attach any evidence to it. Rather, she attempted to establish a prima facie case and that

the Authority's reasons for terminating her were mere pretext by citing some of the evidence that the Authority attached to its motion. After a hearing, the trial court granted summary judgment for the Authority without specifying its reasons, and Alex perfected this appeal.

## DISCUSSION

"[A]n unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ." *Id.* § 21.125(a). The Texas Supreme Court has explained "that 'a motivating factor' is the correct standard for the plaintiff in all TCHRA unlawful employment practice claims." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). In discrimination cases under the TCHRA, a plaintiff can establish a statutory violation with either direct or circumstantial evidence. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781–82 (Tex. 2018). Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *See Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.).

When, as here, a plaintiff has no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework governs. *See Clark*, 544 S.W.3d at 782 ("Because smoking guns are hard to come by, the three-part *McDonnell-Douglas* burden-shifting framework enables an employee to establish discrimination with circumstantial evidence.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Under that framework, if the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim. *Clark*, 544 S.W.3d at 782. But the

4

employer can rebut this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. *Id.* Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination. *Id.* Once the burden shifts back to the employee to show that the employer's proffered reason was a pretext, to defeat a summary-judgment motion, the employee must present evidence raising a fact issue as to whether the employer's proffered reason was false and that it intentionally discriminated when it decided to terminate the employee. *See Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 438–39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

To meet her initial burden to establish a prima facie case, Alex had to show that (1) she has a disability, (2) she was qualified for the job, and (3) she suffered an adverse employment decision because of her disability. *See Department of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 174 (Tex. App.—El Paso 2021, no pet.); *Donaldson*, 495 S.W.3d at 436. In her live petition, Alex alleges that she suffers from the disabilities of narcolepsy and sleep apnea, but in her response to the Authority's motion for summary judgment, she identified ADHD as her disability and asserted that the Authority "perceived" her as having a current addiction to opiates, even though she does not.

For purposes of the TCHRA, "disability" is defined as (1) a mental or physical impairment that substantially limits at least one major life activity of the subject individual, (2) a record of such an impairment, or (3) an individual's being regarded as having such an impairment. Tex. Lab. Code § 21.002(6). Specifically excluded from the definition of "disability" is "a current condition of addiction to the use of alcohol, a drug, an illegal substance,

5

or a federally controlled substance." *Id.* § 21.002(6)(A). That is, a current addiction to drugs—or an employer's regarding an employee as having a current addiction to drugs—is not a recognized disability under the TCHRA and cannot support a TCHRA claim. *See Melendez v. Houston Indep. Sch. Dist.*, 418 S.W.3d 701, 708 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Thus, Alex may not rely on evidence pertaining to the Authority's suspicion or perception that she had a then-current addiction to drugs to establish a prima facie case or to create a material fact issue on whether the Authority's reasons for terminating her employment were false and pretextual. *See id.*; *see also Texas Tech Univ. Health Scis. Ctr.–El Paso v. Niehay*, 671 S.W.3d 929, 935–36 (Tex. 2023) (noting that to establish "a 'regarded as' claim," plaintiff must show that she was perceived as having impairment and was terminated based on that perception).

In its no-evidence motion for summary judgment, the Authority argued that Alex had no evidence of any of the elements of a prima facie case. It further argued that it had produced evidence of legitimate, nondiscriminatory reasons for not continuing Alex's employment and that Alex had no evidence that its reasons were false or pretextual. On appeal, Alex contends that summary judgment was improper because she (1) met her prima facie burden and (2) presented evidence creating a genuine issue of material fact about whether the Authority's legitimate, nondiscriminatory reasons for terminating her employment were false or mere pretext. The standards for summary judgments are well-established, *see* Tex. R. Civ. P. 166a(c), (i), and we review de novo the trial court's summary-judgment ruling, *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

We first consider whether Alex has cited any evidence creating a fact issue on the first prong of her prima facie case: whether she has a "mental or physical impairment that

6

substantially limits at least one major life activity." *See* Tex. Lab. Code § 21.002(6). As in her response to the Authority's summary-judgment motion, on appeal the only disability that Alex contends she has is ADHD, and she claims that falling asleep at work was a result of the ADHD; she makes no argument on appeal that her disabilities are narcolepsy and sleep apnea, despite the allegations in her live petition. We thus consider the evidence she cites to support her allegations that she has ADHD and that it substantially limits her major life activity of sleeping. *See id.*; *see also Carter v. Ridge*, 255 Fed. Appx. 826, 830 (5th Cir. 2007) (assuming that "sleeping constitutes a major life activity" and holding that plaintiff failed to raise genuine issue of material fact as to whether his impairment substantially limited his ability to sleep). "An impairment substantially limits a major life activity if it makes an individual completely unable to perform the activity or if it 'significantly restricts the duration, manner, or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity.'" *Carter*, 255 Fed. Appx. at 830 (quoting 29 C.F.R. § 1630.2).

Alex cites only one short excerpt from her deposition to support this first element of her prima facie case.[3] That excerpt reads as follows:

> [Counsel's question]: How did the—the A—how did your ADHD
> affect your work performance at the Housing Authority?
>
> [Alex's answer]: The sleep issue was I was tired. It was—I

---

[3] She also cites the Authority's entire motion for summary judgment and exhibits, totaling 162 pages, without any more specific citation to portions thereof. This Court's duty does not require or allow it to scour the entire 162 pages to determine whether there might be additional evidence to sustain Alex's appellate issues. *See Valentini v. Cordier*, No. 03-23-00421-CV, 2025 WL 409054, at *7 (Tex. App.—Austin Feb. 6, 2025, no pet.) (mem. op.). We therefore consider only the specific portion of the record that Alex cites.

couldn't get my—everything was kind of just disorganized, and just different things like that.

The above excerpt does not create a genuine issue of material fact that Alex's ADHD was a mental or physical impairment that substantially limited her ability to sleep. A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). No genuine issue of material fact is created if the evidence is "'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). Alex's testimony that her ADHD affected her work by making her "tired" and that everything was therefore "disorganized" is not enough to raise a genuine issue of material fact as to whether her ADHD substantially limited her major life activity of sleeping. *See Carter*, 255 Fed. Appx. at 830–31 (holding that doctor's statement that plaintiff had "sleep disturbances" and was getting less than five hours of sleep per night did not raise fact issue on whether plaintiff's alleged PTSD substantially limited his sleeping) (collecting cases holding similarly); *see also Quantum Chem. Corp.*, 47 S.W.3d at 476 (noting that because one of TCHRA's purposes is to provide for "the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," Texas courts are guided by "analogous federal statutes and the cases interpreting them"). Alex's statements that her "sleep issue" was that she "was tired" and that "everything was kind of just disorganized" do not provide any of the requisite details about the restrictions that her ADHD caused with respect to her sleep or any other major life activity, such as the duration, manner, or condition under

8

which those activities are significantly restricted, to allow a factfinder to reasonably find that she has an actionable disability. *See Carter*, 255 Fed. Appx. at 830.

We conclude that Alex did not meet her burden of creating a genuine issue of material fact on the first prong of her prima facie case, *see* Tex. R. Civ. P. 166a(i), and we therefore need not consider the other prongs of her prima facie case or her other appellate issue in which she contends that the Authority's reasons for terminating her were mere pretext. *See* Tex. R. App. P. 47.1, 47.4. No-evidence summary judgment was properly granted on the Authority's assertion that Alex had no evidence to support her prima facie case. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## CONCLUSION

We affirm the trial court's summary judgment.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed:   March 26, 2026

9